[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, John Ivaldi, sues the defendant, Debra Millette, for damages under General Statutes § 47a-21 (d)(2) for failure to return a security deposit in a timely manner. On July 18, 2001, the court heard a trial of this matter.
The court finds the following facts. The plaintiff entered into a lease CT Page 9709 agreement with the defendant to rent an apartment located at 29 Pine Street, Columbia, Connecticut. The monthly rent was $725, and the lease expired on August 31, 1996. The agreement also prohibited the keeping of pets on the premises. The plaintiff posted a security deposit of $1450 with the defendant.
The plaintiff never personally resided at the apartment but, instead, had leased it for the benefit of his two daughters and a boyfriend of one of them. During the tenancy, these occupants damaged the premises necessitating repairs to a bifold door, a vanity door, a basement window, two phone jacks, weatherstripping around two exterior doors, the repainting of a ceiling, and the cleaning or repainting of interior walls. In addition, in violation of the lease, the occupants' harbored a cat who urinated in several spots on the wall-to-wall carpeting in the apartment creating a powerful and lingering odor on the premises.
Shortly before the lease expired on August 31, 1996, the occupants vacated the apartment. They withheld surrender of the apartment keys, however, until a few days after August 31, 1996, because the defendant refused to release the security deposit. The defendant orally explained to the occupants and the plaintiff that, because of damage done to the apartment, the defendant would retain the deposit until the costs of repair and cleaning were ascertained.
Sometime during the week after the lease expired, the plaintiff and defendant inspected the apartment, and the plaintiff acknowledged the strong cat urine odor. The plaintiff, who ran a janitorial service, offered to clean the carpeting, but the defendant rejected the offer. On September 27, 1996, the defendant sent a letter to the plaintiff describing the issues of repair that needed to be resolved before the deposit would be refunded, and relating that the defendant had hired a cleaning service to address the soiled carpeting and walls and that two attempts by that service to remove the urine stench were unsuccessful. The letter lacked any itemization of the particular damage claimed nor the amounts needed to accomplish restoration.
On October 11, 1996, Attorney Glenn Terk wrote a letter to the defendant notifying her that the plaintiff retained him to secure refund of the deposit and requesting that she contact his office to discuss the dispute. On October 21, 1996, the defendant responded through a letter which itemized the specific points of damage sustained and the cost to repair the same. In that letter the defendant deducted the cost of repairs which totaled $1,380.87 from the $1450 security deposit plus $66.68 in interest which had accrued leaving a refund to the plaintiff of $135.81. A check for that amount, payable to the plaintiff, was also enclosed. CT Page 9710
The cost of alleviating the cat urine odor included $299 paid to a flooring contractor. When the cleaning service's shampooing efforts proved futile, the only reasonable solution left was to remove portions of the carpeting and padding, apply a sealant to the floor beneath, and replace the soiled material with new padding and carpet.
The court finds that the amounts proffered by the defendant as necessary to repair and clean the damage to the apartment during the plaintiff's tenancy were both necessary and reasonable.
Unfortunately, the resolution of this case is controlled, not by what is equitable, but by statutory fiat which mandates that the plaintiff prevail because the defendant breached the time limits set forth therein. Section 47a-21 (d)(2) states that a landlord, holding a security deposit, must refund the full deposit within thirty days of termination of the tenancy unless the landlord justifies a deduction from that deposit for damages to the premises caused by the tenants "together with a written statement itemizing the nature and amounts of such damages." The landlord's liability for noncompliance is "for twice the amount or value of any security deposit paid by such tenant."
Formerly, § 47a-21 (d)(2) permitted a landlord to notify the tenant, in writing, within thirty days that the deposit was being withheld to redress damage. An additional sixty day period in which to supply the details or itemization was afforded. Public Acts 87-348 amended § 47a-21 (d)(2) by deleting the sixty day follow-up period for itemization and instead compelled landlords to submit to the former tenant a written itemization within the initial thirty days or refund the deposit in full. Apparently, the legislature decided that the tenant's need for prompt return of a security deposit outweighed any difficulty a landlord might encounter in obtaining repairs or because the extent of damage was greater than that which appeared on the surface. The landlord has a remedy in that the landlord can refund the deposit and then pursue an action against the tenant for the property damage. It is only the advantage of having the deposit in hand which is lost.
In this case, the defendant failed to communicate a written itemization of damage to the apartment both as to nature and amount within thirty days after the lease terminated, nor did she render a full refund within that time. Consequently, the plaintiff is entitled to damages under § 47a-21 (d)(2) in the amount of twice the $1450 deposit paid by the plaintiff, viz. $2,900.
Judgment may enter for the plaintiff against the defendant for $2,966.68. CT Page 9711
Sferrazza, J.